## F. T. LEAK VS. W. W. COOK.

1. AGRICULTURAL LIEN: *Acts of 1867 and 1872.*
  The act of February 18, 1867, continued in force until repealed at the extra session of the legislature in October, 1873. Where a creditor had acquired the agricultural lien upon the terms prescribed by the 1st, 2d and 3d sections of the act of 1867, or taken a mortgage or deed of trust under the 7th section of the act, before the passage of the act of April 5, 1872, then he had acquired a vested right, by contract, which the legislature could not defeat or impair, and his security would be paramount to that conferred by the act of 1872.

2. SAME: SAME: *Priority of lien. Case in judgment.*
  A lien acquired by virtue of the 1st section of the act of April 5, 1872, called a "first lien in law," for the wages of the laborer, is superior to a deed in trust executed before the laborer was employed, but after the passage of the act. A land owner who crops on shares with laborers is given a lien by the 10th section of the act of April, 1872, for all moneys and supplies advanced to the laborers to enable them to make a crop.

APPEAL from the Chancery Court of *Benton* County.

Hon. DEWITT STEARNS, Chancellor.

Complainant Cook filed his bill in the chancery court of Benton county, to enforce a lien which he claimed on the crop of P. H. Leak, grown during the year 1872. The instrument

---

---

relied on as creating the lien was executed April 6, 1872, and filed with the clerk of the circuit court April 13, 1872.

Defendant P. H. Leak's answer admits the lien, but sets up a prior lien in favor of F. T. Leak. This was, upon motion, stricken out, and F. T. Leak, upon petition, is made a party defendant, and filed an answer and cross-bill, alleging a contract with P. H. Leak in January, 1872, to cultivate certain lands, F. T. Leak to furnish lands, rations, etc., and the crop to be divided between them, as per terms set out, and claims a lien, upon this state of facts, under the act of April 5, 1872.

Complainant demurred, the demurrer was overruled, and at the hearing the chancellor decreed, giving F. T. Leak priority as to all claims for money or provisions furnished after April 5, 1872, and the case comes to this court on appeal.

It is assigned for error that "the court erred in not extending the demurrer back to the original bill and dismissing it."

*Eugene Johnson* for appellant:

Complainant's lien is based upon the act of February 18, 1867 (Acts, p. 569). It is the creature of statute. Was the act in force at the time of Cook's contract with P. H. Leak, April 6, 1872? The subject was revised by act of April 5, 1872 (Acts of 1872, p. 131). This repealed the first five sections of the act of 1867, *supra*. The two acts are in conflict. The latter repeals all acts in conflict with it. For construction of the contract, see Washb. on Real Prop., 496. The relation of landlord and tenant does not exist. 1 Bl. Com., 317, § 4; Warren v. Haisington, 42 W., 94; State v. Jewel, 43 N. J., 259; Aikins v. Smith, 21 W., 72; Walker v. Morgan, 8 B. Mon., 136; Maverick v. Lewis, 3 McCord, 211.

They are not partners. Pars. on Part., 73–79; Hill. on Cont., 470; Christian v. Crocker, 25 Ark., 327; Mason v. Hacket, 4 Nev., 420; 43 Barb. (N. Y.), 435; May v. Combs, 15 Ind., 469; Blue v. Leathers, 15 Ill., 31.

Cook's lien is not within the statute. Adams v. McKesson's

Ex'r, 53 Penn., 81; Chase v. McDonald, 24 Ill., 236; Cole v. Hester, 9 Ired., 23; 3 Washb., 461.

*Kimbrough & Abernathy*, for appellee:

The bill alleges both a lien and deed of trust, and unless the act of February 18, 1867, was repealed *in toto* by the act of April 5, 1872, there was no error in the decree. 1st. The lien can be given for supplies. 2d. A deed of trust on crops may be given fifteen months in advance of their growth, to secure any debt.

The lien is a vested right. It cannot be abrogated. Anderson v. State, 1 Cushman, 459; Stewart v. Flowers, 44 Miss., 513. The contract between F. T. Leak and P. H. Leak, is not a hiring for wages. 1 Washb. on Real Prop., 496–500.

It is in the nature of a *quasi* partnership. Richardson v. Davis, 45 Miss., 502; Tharp v. Marsh, 40 ib., 160.

They are tenants in common of crops. Cooper v. Frierson, 47 Miss., is cited in support of Leak's claim, if a parol trust and no notice to Cook is shown.

The decree should stand unless opposed to the clear preponderance of the testimony.

SIMRALL, J., delivered the opinion of the court.

The parties claim conflicting liens on the agricultural crops of their common debtor. The precise question is whether Leak, the appellant, has a better right, under the statute of 5th of April, 1872, than Cook, the appellee, under his express lien, asserted to have been acquired in conformity with the statute of 1867, for the encouragement of agriculture. Since this appeal has been taken, and the agreement of counsel prepared, several of the questions arising under these statutes have been considered and passed upon by this court. Some of the principles which apply to this case were discussed and declared in these adjudications. The act of 18th of February, 1867, continued in force until repealed at the extra session of the legislature in October, 1873. If a creditor had acquired

the agricultural lien upon the terms prescribed in the 1st, 2d, and 3d sections of that statute, or had taken a mortgage or deed of trust under the 7th section, before the act of the 5th of April was passed, then he had acquired vested rights, by contract, which the legislature could not defeat or impair. Such agricultural lien or mortgage, or trust deed, had all the virtue, as a security, intended by the act of 1867, and could not be limited, curtailed, or diminished by subsequent legislation. If, therefore, the crop has been incumbered by mortgage or deed of trust, before the passage of the act of the 5th of April, 1872, such security is paramount, and superior to the liens conferred by the statute. It operates by way of restriction on the power of the employer or the cropper to incumber the products, so as to take away the right to do the act by reason of which the implied lien arises.

The laborer who agrees to produce crops on the shares with the land owner, since the passage of the act of April, 1872, cannot mortgage or incumber his interest or share, so as to defeat a lien which may arise by operation of law under the 10th section, to secure such aid and contributions as therein contemplated in behalf of the land owner. Such incumbrance would be inferior and subordinate to the implied lien. It was held in Buck v. Payne & Raines (at this term) that the lien under the 1st section of the act of 1872, for the wages of the laborer, was superior to a deed in trust, executed before the laborer was employed but after the passage of the act, because the intent of the statute was to limit the dominion of the employer over the product, to the extent of the liens that may arise in favor of those who bestow labor upon it.

The 10th section gives the same character and dignity of lien to secure the debt for advances and supplies. It is called a "first lien in law." To the same extent that lien is entitled to priority over other incumbrances, as allowed by the 1st section, to secure wages.

We have recently decided that the land owner who crops on the shares with laborers is protected by that section for all the

moneys and supplies, or advances to the laborers, to make the crops.

The testimony is confused as to the character of the relation between F. T. Leak and P. H. Leak. It arises, perhaps, from the inability of the witness to use language with precision. We think, however, that it is proved that the parties were interested in the crop on the shares, and were tenants in common of the products in the proportions agreed upon. The interest of P. H. Leak was subject to his disposition and control, except so far as affected by the statute of 1872. The contract was made with the appellee, Cook, on the 6th day of April, 1872. It was filed with the clerk of the circuit court on the 13th of April, and thereby secured to the appellee the lien, as provided for under the statute of 1867. But this security was not obtained until after the passage of the act of 5th of April, 1872, and must therefore be postponed to the "first lien in law," which arose in favor of F. T. Leak for moneys and necessary supplies to make the crop.

These principles are laid down in the cases already cited, and in the other adjudications of this court on this statute, considered in connection with that of 1867. It follows that the express lien which Cook obtained under his contract, and its enrollment, was subject to a right in P. H. Leak to procure money and supplies, in aid of his crop, from F. T. Leak, who furnished the land and was with him interested in the crop. That lien could not take effect until after the passage of the act of April, 1872.

The chancellor proceeded on a correct interpretation of this statute in determining that F. T. Leak had a prior right to satisfaction out of the cotton and corn, "for all provisions, clothing, and necessary plantation supplies advanced or furnished, and for all money furnished for the purchase of the same." The lien to begin, for such advances, supplies, etc., furnished, after the 5th of April, 1872; the surplus to be paid over to Cook, by reason of his contract, which operated both

as an agricultural lien and mortgage.   In this respect it is like the case of Stewart *v.* Hollins et. al., 47 Miss., 711.

The decree of the chancellor properly administers the equities of the parties, and is affirmed.